UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

------------------------------------------------------------
                                )
Steamfitters Local 449 Pension  )  File No. 21-cv-2669
and Retirement Security Funds,  )           (PJS-BRT)
Individually and on Behalf of   )
All Others Similarly Situated,  )
                                )  St. Paul, Minnesota
          Plaintiffs,           )  March 24, 2022
                                )  9:30 a.m.
vs.                             )
                                )
Sleep Number Corporation,       )
Shelly R. Ibach, and David R.   )
Callen,                         )
                                )
          Defendants.           )
------------------------------------------------------------

**BEFORE THE HONORABLE BECKY R. THORSON**
**UNITED STATES DISTRICT COURT MAGISTRATE JUDGE**

**(MOTION HEARING VIA ZOOM)**

Proceedings recorded by mechanical stenography; transcript produced by computer.

ERIN D. DROST, RMR-CRR
(651) 848-1227

APPEARANCES VIA ZOOM

For the Plaintiffs:        Robbins Geller Rudman & Dowd
                          BRIAN COCHRAN, ESQ.
                          655 West Broadway
                          Suite 1900
                          San Diego, California 92101

                          Labaton Sucharow LLP
                          FRANCIS P. MCCONVILLE, ESQ.
                          140 Broadway
                          New York, New York 10005

                          Lockridge Grindal Nauen PLLP
                          GREGG M. FISHBEIN, ESQ.
                          100 Washington Avenue South
                          Suite 2200
                          Minneapolis, Minnesota 55401

For the Defendants:        Fox Rothschild LLP
                          BRET A. PULS, ESQ.
                          222 South Ninth Street
                          Suite 2000
                          Minneapolis, Minnesota 55402

                          Weil Gotshal & Manges LLP
                          JOSHUA S. AMSEL, ESQ.
                          JOHN A. NEUWIRTH, ESQ.
                          767 Fifth Avenue
                          New York, New York 10153

For the Movant Ricardo     Pomerantz LLP
Dario Schammas:            MICHAEL GRUNFELD, ESQ.
                          600 Third Avenue
                          Suite 20th Floor
                          New York, New York 10016

                          Forsgren Fisher McCalmont
                          DeMarea Tysver LLP
                          ROBERT J. GILBERTSON, ESQ.
                          225 South 6th Street
                          Suite 1750
                          Minneapolis, Minnesota 55402

Court Reporter:            ERIN D. DROST, RMR-CRR
                          Suite 146
                          316 North Robert Street
                          St. Paul, Minnesota 55101

**P R O C E E D I N G S**

**IN OPEN COURT**

**(Via Zoom)**

THE COURT:   Good morning.  This is the United States District Court for the District of Minnesota.  I'm Magistrate Judge Thorson, and we're here for a motions hearing in the matter entitled Steamfitters Local 449 Pension and Retirement Security Funds, individually and on behalf of others similarly situated, plaintiffs, vs. Sleep Number Corporation, Shelly R. Ibach, and David Callen, defendants.

We are here for a motion hearing before the Court here on Movant Ricardo Dario Schammas' motion for appointment as lead plaintiff and for approval of lead and liaison counsel, and that motion is at Docket Number 15.

What I'll do first here, we're in the Zoom courtroom here, and I do want to go through a few steps, even though everyone is all too accustomed to Zoom.  But let me first ask you on the video screens if you can please raise your hand if you can see and hear me.

(Hands raised.)

THE COURT:  Terrific.  I see all hands raised.

And so next I will ask the lawyers to -- well, actually, I'll do this.  The lawyer who will be arguing on

behalf of Steamfitters, I will ask you to note your appearance next and then introduce the lawyers who are on your team and that way we won't have people speaking over each other.  And if your name is announced, just wave your hand, and then I can make sure I see who you are.  So let me start out with the lawyer who will be arguing for Steamfitters today.

MR. COCHRAN:  Good morning, Your Honor.  Brian Cochran from Robbins Geller on behalf of the Steamfitters Fund.  With me this morning is Gregg Fishbein and Frank McConville.

THE COURT:  Good morning.

And next let's get appearances for the defendants. And, Counsel, I don't believe you are taking a position here today, but let me go ahead and get appearances, of course. And I believe, Mr. Neuwirth, you identified yourself already as counsel here on behalf of the defendants.  Why don't you go ahead and introduce yourself, and then you can introduce the other members of your team.

MR. NEUWIRTH:  Great.  Good morning, Your Honor. John Neuwirth from Weil Gotshal on behalf of all of the defendants.  With me on the Zoom is my partner Josh Amsel, also of Weil Gotshal, and Bret Puls of the Fox Rothschild firm.

THE COURT:  Good morning to you.  And then we do

have the -- counsel for the moving party here today, and so I will ask counsel who is planning to argue to introduce himself and any members of the movant's team.

MR. GRUNFELD:  Good morning, Your Honor.  This is Michael Grunfeld from Pomerantz.  I will be arguing on behalf of movant Ricardo Dario Schammas.  And with me today is Bob Gilbertson from Forsgren Fisher who is assisting as our local counsel in the matter.

MR. GILBERTSON:  Good morning, Your Honor.

THE COURT:  Good morning to you.

All right.  Is there anyone else I've forgotten who is a lawyer representing any party in this case?

Good.  Well, let me first point out -- and this is obvious, but sometimes the obvious we all need a reminder -- you are in the virtual courtroom here today, but this is a courtroom, and it's a public courtroom.  And I don't see that we are dealing with any information that was filed under seal, but I do want to remind you that there may be observers here in our virtual courtroom and in our virtual gallery, and I want you to be mindful of that.  And today we have a court reporter who is also making a record, and that record will be public.  So I do want to give everyone a heads up about that.

And then I do see that those who aren't arguing have blocked out their video.  That is helpful just to help

me focus on the lawyers who will be making oral argument.  I do ask that the lawyers who are participating in the oral argument today keep your videos on.  I appreciate that your microphones stay off during the oral argument, but keep your video on even if somebody else is arguing.  I had another motion where the lawyer, after finishing his argument, turned his video screen off, which, you know, you understand that's what we're -- we've been doing, but I would like to see everyone in the courtroom during the hearing.

I will go over some very basic ground rules here, and I'm not doing it to insult you because I know you know these by heart, and I think most everyone has gotten pretty accustomed to Zoom oral arguments.

What I will ask you to do -- and this is helpful to me but so essential to our court reporter -- when you are arguing, please speak slowly and clearly.  With Zoom, audio bumps can really be compensated for if the lawyers are speaking slowly.  And it may feel a little awkward, and it may feel like it's a little bit different from when you appear in a -- live in a courtroom.  But I ask you to please speak slowly and think about that as you argue.

If you are reading from something, it's so easy to speed up because we think others are growing impatient with us.  We can see it, Speed up, please.  But that's a reminder to continue to keep at pace.  Because, remember, our court

reporter is trying to get down every word, and we need to help her with that process.

If the microphone is being passed from somebody else to you, please restate your name. And especially since we have three male lawyers here who may be speaking up, it will be helpful if our court reporter can hear as well as see your box light up so that it will be a lot easier for her to create the transcript. So if you could do that, it would be much appreciated.

Please don't speak over each other. In the courtroom, sometimes you can hear both of the lawyers talk. You're still interrupting each other. It's still difficult. But with Zoom, you actually cancel somebody out, and we can't do that. So if you must interrupt for some emergency, please wave your hand and we'll know that we've got to pause here, but, really, please don't interrupt each other. You'll have your turn.

Pause between transitions or points. That helps us all catch up, but it also helps me find a natural break in -- if I have any question. If I'm not finding a natural break, you may see me raise my hand like this (indicating). And if I do, I'm not asking you to stop in your tracks. And it's hard to just finish your thought sometimes, but I'm not trying to alarm you. I'm just trying to signal that I do have some question. And so if you could finish your

thought, wrap up what you are doing and pause, then I can insert the question at a time where I'm not getting you off track.

If the court reporter waves her hands, that means she's not making a record and we have to stop talking, and we'll do that.

If you notice somebody has dropped off here who is participating in the hearing today, let's all stop talking and we'll make sure we can get that fixed.

If -- let me now go to the time that I've allotted. I think that the moving party and Steamfitters, I think you can probably complete your oral arguments in about 30 to 35 minutes. And what I'm going to do is allow you some rebuttal time to reserve, all right? So the limit will be 35 minutes, and before you start, you can reserve rebuttal time. And I'm doing that because we have so many opening motion -- we have an opening motion, an opposition, a rebuttal, and a reply, and a sur-reply, and so I do want to make sure that we don't -- that we have some structure for that process.

And so before I begin, Mr. Neuwirth, is the defendant taking any position regarding this motion?

MR. NEUWIRTH: We are not, Your Honor.

THE COURT: All right. Thank you.

Well, this is the motion that has been filed by

Mr. Schammas.  Mr. Grunfeld, are you ready to proceed?

MR. GRUNFELD:  I am, Your Honor.  Thank you.  And I'd like to reserve ten minutes for rebuttal time, please.

THE COURT:  Thank you.  And what you'll do, do you see the chat feature, Counsel, on your Zoom?

MR. GRUNFELD:  Yes.

THE COURT:  Why don't you click on that, and my court reporter -- my law clerk will be monitoring the time, and then you will see how much time is left for any rebuttal at the end of your oral argument.  And so he'll be keeping track of time.

All right.  Mr. Grunfeld, why don't you proceed.

MR. GRUNFELD:  Thank you, Your Honor.  This is a securities class action against Sleep Number and several of its executives alleging misrepresentations and false and misleading statements related to the company's supply chain flexibility starting in February of 2021.  We represent the lead plaintiff movant, Ricardo Dario Schammas, who is seeking to be appointed as the lead plaintiff in this matter.

The test for whether a movant should be appointed as a lead plaintiff is set forth in the Private Securities Litigation Reform Act, the PSLRA.  And there's essentially three things that the Court should consider.  The first item is the party that has the largest financial interest in the

case, and then the second and third items are whether the movant has made a prima facie showing that they satisfy the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure. But at this stage of the case, they need only make a prima facie showing, not a full showing. That would be at the class certification stage.

It's uncontested that our client, Mr. Schammas, has the largest financial interest in the case. He lost over $14,000 in his investment in Sleep Number as compared to Steamfitters that lost just over approximately $6,000.

Moving on to the typicality and adequacy requirements, both the plaintiff and Mr. Schammas are similarly situated as far as typicality goes. That really relates more to the claims in the case, which are centered on the defendants' actions and, therefore, affect the movant and the plaintiff and all class members the same.

As far as adequacy goes, Mr. Schammas has not only submitted a certification, as required by the PSLRA, attesting to his investments and financial interests and understanding of the legal requirements of the case, he has also gone above and beyond by submitting a declaration where he sets forth his background and his understanding of his duties to the class in this case; his understanding of the interest in recovering the largest possible financial recovery for the class; and his understanding of how he

plans to oversee my firm, Pomerantz, and work with us to oversee the litigation. This evidence that Mr. Schammas has submitted goes above and beyond what is required to show that he will adequately represent the class.

And I see Your Honor has a question.

THE COURT: I'd like to focus a little bit on the financial interest, and I didn't see that the financial interest amount was not contested in any way. What I saw -- and maybe it isn't. But what I saw in the opposition brief was that there's not clarity here with respect to the financial interest.

Let me pause here and ask my law clerk, is there an issue?

THE LAW CLERK: I just got bumped off. I apologize.

THE COURT: Are we still recording?

THE LAW CLERK: We are still recording.

THE COURT: All right. Thank you. So we will proceed.

And what I heard was -- what I saw in the briefing was that Mr. Schammas has not verified the loss and, for example, has not explained, like he did in the case where he asked for appointment in the *360 Digi* case, that he had another account, which would be looking at some type of options transactions as a hedge. And so can you talk about

the methodology for calculating the loss because that's something that I need to understand?

MR. GRUNFELD:  Yes, Your Honor.  So the only transactions that are relevant here are transactions in Sleep Number stock.  The complaint that Steamfitters filed in this case expressly limits the class to investors in Sleep Number stock.  There are other cases where the class might be broader and include all securities or could include bonds or could include options.  In this case, the complaint expressly references stock.  And the PSLRA, in turn, requires that a lead plaintiff in a case provide their interest in the securities that are at issue in the action.

So it's really entirely speculative and also irrelevant, the concern that Steamfitters raises from a separate case that has nothing to do with this case.  We could equally question whether Steamfitters engaged in other transactions to hedge their position, but it's just not at all relevant to the case that Steamfitters has brought.

And I -- yes, Your Honor.

THE COURT:  But it -- do you believe that they are not contesting the financial interest amount?

MR. GRUNFELD:  My sense is they are not contesting the stock transactions that Mr. Schammas put in his certification and nor are they contesting the calculation that he had suffered approximately $16,000 in -- excuse

me -- approximately $14,000 in losses based on taking the amount that he paid for his securities and using the average price over the 90 days after the class period. Those calculations I do not think are contested.

THE COURT: And are there other ways to determine loss? You selected one. And I understand that Mr. Schammas did not make the loss -- or the financial interest calculation, the lawyers did. Are there other methods to make this calculation?

MR. GRUNFELD: My understanding is the two main methods that come up are the FEFO and the LEFO method, whether you take -- whether you offset transactions based on the first transaction or the last transaction. I don't think that those would make a difference here. Mr. Schammas bought a certain amount of stock. I think it's 482 shares, if I got that correctly, during the class period, and he continued to hold all of them, so there aren't any offsetting transactions that are at issue here.

I think there are cases where the parties will contest the method being used, but that just hasn't come up in either parties' briefing here, so it doesn't seem to be at issue.

THE COURT: And the reason I ask is I've looked at the cases, and the Court needs to understand the methodology, and the Court needs to be able to make a

determination, so that's why I'm asking and focused on this because I did see a reference in the footnote and in the body of the opposition about, you know, how -- how much information is available and that Mr. Schammas did not sign a declaration that indicated that he didn't have related accounts to -- that would come into any kind of assessment of a financial interest. So sorry to throw you off track there, but I didn't want you to leave financial interest.

MR. GRUNFELD: Thank you, Your Honor. I should just correct myself. Mr. Schammas had purchased 382 shares. I think I had said 482 before. And Mr. Schammas did submit a certification with his motion that attests to the fact that those are all of his transactions in Sleep Number securities during the class period as specified in the complaint.

So I think that the points that I have covered really are all that the Court needs to appoint Mr. Schammas as the lead plaintiff. Based on his having the largest financial interest and making the prima facie showing of typicality and adequacy under the PSLRA makes him the presumptive lead plaintiff in the case.

At that point, the only way that he would not be qualified to be appointed as the lead plaintiff would be if Steamfitters rebutted that presumption in some way, and Steamfitters has not done so. Steamfitters' main argument

ERIN D. DROST, RMR-CRR
(651) 848-1227

is that even though it lost less money in its Sleep Number investment, it's an institutional investor and that should be favored.

But all the cases that Steamfitters cites don't actually support appointing an institutional investor over an individual investor when the individual investor has significantly larger losses.  In the cases that Steamfitters cites, either they were citing just dicta where the institutional investor actually had the largest loss, or, at best, the losses were relatively equal on a percentage basis and there were other factors that the Court considered to be in favor of the institutional investors, such as, whether the individual might have had unique defenses or some other special factor.  There was no such special factors here, and so the Court should appoint Mr. Schammas as the lead plaintiff.

The one last point that I'd like to make before I reserve the rest of my time is that Steamfitters also argues that in the alternative, it should be appointed as the co-lead plaintiff along with Mr. Schammas.  But the cases that it cites also don't support that position.  If anything, Steamfitters arguing to be appointed as the co-lead plaintiff really just shows its acknowledgment of the weakness of its position.  In the cases that Steamfitters cites on that point, there also were either

special factors that led the Court to appoint an institution as the co-lead plaintiff or the institution and the individual had moved together as a group, and so the Court was simply acknowledging and confirming the parties' joint wish to work together in the case, which is not present here.

Unless Your Honor has any other questions, I'd like to reserve the rest of my time, please.

THE COURT: I do have a couple of questions. What is the down side to the Court appointing both an individual and an institution as co-plaintiffs? I know you mentioned that your client doesn't want it, and I looked at the two cases that were cited, but I didn't see those cases stand for the proposition that if a -- one plaintiff doesn't want it, that's a basis for the Court not to appoint co-lead. So tell me what the down side is for co-lead plaintiffs in a case like this, especially when I've seen many cases where there's a combination of an individual and an institution and the rationale for that is that it does provide for kind of a way for plaintiffs with some diverse experiences to come together?

MR. GRUNFELD: There's really no need for that in this case. Your Honor, in this case, the losses that the parties submit are $20,000 combined. Mr. Schammas has approximately $14,000 in losses. It's also a relatively

short class period from February to July of the same year. This is the type of case where it's -- a single lead plaintiff and a single firm are perfectly capable of running the litigation and there's no need to overcomplicate it with the extra work that would be involved from having a second lead plaintiff and a second firm running the case together.

THE COURT:  But is there a down side?

MR. GRUNFELD:  Well, just the duplication of effort.  And generally in these cases, there's a concern to keep things efficient and to keep the work -- to avoid the work being duplicative.  And in a case that could involve billions of dollars in damages and could involve a class period that stretches over several years, then there's -- there's plenty of room for more than one firm to split the work and not be duplicating effort, but that doesn't seem to be the case here.

THE COURT:  In cases where I have seen the co-lead plaintiffs, I have seen that the judge also issues an order that says that the counsel would work together to avoid duplication.  Have you ever served as counsel to a co-lead plaintiff?

MR. GRUNFELD:  I have, Your Honor.

THE COURT:  And does that work?

MR. GRUNFELD:  It does, Your Honor.  And of course if Your Honor appoints two movants as co-lead plaintiffs, we

would, of course, do just what Your Honor said.  But it just seems unnecessary here given the nature of this case.

THE COURT:  Very good.  Thank you so much for responding to my questions.

So now I will turn it over to counsel for Steamfitters.

MR. COCHRAN:  May it please the Court.  Good morning, Your Honor.  Brian Cochran on behalf of plaintiff Steamfitters Fund.  Now, I think counsel for Mr. Schammas is correct that we generally agree on the legal principles applicable to the competing motions, however, Your Honor is also correct is that we have raised factual issues that we have with the financial interest.

I think what I just heard actually made me more concerned that there could be facts that are not being fully disclosed, because I think if the -- Mr. Schammas did not have -- did not have transactions that could get to his typicality or adequacy, it would be very easy to have said so on sur-reply.  I think it's very unusual that he did not do that.

And what we just heard was, Well, it says stock in the complaint, therefore, we don't have to talk about other securities.  The problem with that is it certainly can undermine the financial interest if you have other types of transactions that offset the stock losses, but, in addition,

it can go to typicality and adequacy. And I don't think counsel for Mr. Schammas would disagree with the fact that defendants will certainly bring it up down the road. So it would have been very easy just to confirm there are no other issues, and I think it's unusual that that was not done here.

Also, in terms of other relevant factors to financial interest, I believe actually the Steamfitters Fund has a higher number of shares purchased, so that's one. I think we have over -- the fund has over 500 shares that were purchased. I think Mr. Schammas just said there was 382 purchased during the class period. And Courts do have flexibility, when determining financial interest, to look at a variety of factors.

But I think here the fact is both candidates have a relatively small financial interest in particular when you look at losses in other similar cases, other securities class actions. You have about an $8,000 difference between the two candidates. That's well within the range of what Courts have held is de minimis and instead turn to the other factors relevant to the inquiry; namely, typicality and adequacy.

So turning to those briefly, we would respectfully disagree that there is some equivalency on a typicality or adequacy front between the two candidates. On the one hand,

you have the Steamfitters Fund whose typicality and adequacy has not been questioned by any party. It's not really in doubt. The fund has spearheaded this litigation from Day 1. It's the fund that developed the case and filed it through its counsel for the protection of all class members. It manages hundreds of millions of dollars in assets under management. It is the prototypical lead plaintiff envisioned by the PSLRA to lead these types of cases. It's an experienced fiduciary, not only on behalf of its thousands of beneficiaries, but also with respect to leading securities class actions and other types of shareholder litigation. It is a very savvy, sophisticated, and experienced lead plaintiff. So that's on the one hand.

On the other, we have Mr. Schammas who is an individual retail investor based in Buenos Aires, Argentina. We know very little about him. He has not responded to the questions we pose in our brief regarding his trading. He has no prior experience of which we are aware leading securities litigation or any other type of shareholder litigation. He did not develop this case or file any pleadings to date in the action.

And while he claims a somewhat larger loss than the pension fund, it's still not a very large loss in the context of a case like this. It's approximately $14,000, and that could pose a significant risk to the class given

the complexity of the case and given the fact that he's an individual investor and lives very, very far away.

And it's not just geographic distance and a potential language barrier that could become a problem, but his appointment could introduce serious logistical complications as well.  So in preparing for this hearing, I looked up flights from Buenos Aires to Minnesota.  I couldn't find any direct flights.  The flights ranged from 15 up to 30 hours both ways, so you're looking at potentially multiple days of travel if he was ever required to come to the United States for court proceedings, or, relatedly, if the case gets to the class certification phase, all of the counsel is going to have to go to Buenos Aires for a deposition.  So that's going to add complexity. It's going to -- yes, Your Honor.

THE COURT:  Sorry.  Every time I tell lawyers that when I raise my hand they can finish their thoughts, everybody stops.  So I apologize for stopping you in your tracks and to Mr. Grunfeld too.

You mentioned the status of a foreign investor here.  Tell me about how that would affect taking discovery in Argentina.  I believe Argentina might be a Hague Convention country, but I remember in my practice days what requirements were involved in going through the Hague Convention procedures for discovery.

Let me ask you about the typical types of things that a lead plaintiff may be involved in procedurally that would require, you know, looking at the Hague Convention for how to do that in Argentina. And, Mr. Grunfeld, I'll come back to you and allow you to tell me your thoughts on that. But, Mr. Cochran, why don't you continue and fill me in on that.

MR. COCHRAN: So there's three kind of big categories that I can think of off the top of my head where this could become an issue. One, there's going to be document production, there could be certain translation. That's relatively minimal burden because that can be sent electronically. It may add some costs if there are things that are discoverable but are not in English. That will need to be translated obviously.

In addition, the deposition that will be at the class certification phase, I predict -- I don't want to speak for defense counsel, but I predict they are going to want to take that in person. Hopefully we won't be in the Zoom days at that juncture in the proceedings. But that would require, then, everybody to travel down to Buenos Aires. And if this case gets to trial, the plaintiff -- the lead plaintiff will want to be in the -- at the trial, attending the trial.

So we are, you know, fingers crossed at the tail

end of a global pandemic.  I think that adds another layer of uncertainty and complexity.  I don't know where things -- I don't think anybody does -- how things will stand six months, a year from now.  But the reality is if Mr. Schammas had hundreds of thousands of dollars in losses, I don't think it would be as concerning.  The problem is -- or if he was an institutional investor and had a board and had fiduciary responsibilities.

The problem is as an individual with relatively small losses, there is a real risk that down the road we get into this case and he decides it's not worth it.  And that, unfortunately, occurs with individual class representatives, with lead plaintiffs from time to time, and it can be absolutely devastating to the case, to the rights of other class members.

To just give you one example of what can happen, we cited the *China Agritech* decision in our papers.  This is a 2018 Supreme Court decision that held the statute of limitations is not tolled on a class-wide basis.  So if that was to occur down the road, the claims of other class members could be time barred.  And so it's a real risk. And, again, if he was -- if he had suffered hundreds of thousands of dollars of losses, that risk would be minimized.

There's also third-party discovery that could

happen. For example, if he uses a broker, an investment advisor to make his transactions, that could add additional layers of complexity. And when you add it all up and you have a institutional investor that does not pose these concerns, that has stepped up from Day 1 and led the case to get to this point, is an experienced fiduciary, the question really is why create that risk for the class?

So I think if there was two individuals, perhaps that would be more determinative, the financial interest. But where they are relatively close, we have cited a number of cases where -- I think three -- the *SunOpta* decision, the *Endo International* decision, and the *BRF* decision -- where Courts have said, It's close enough, therefore, we're going to look at the other factors -- typicality, adequacy, and the presumption -- which many Courts have acknowledged and is clear from the legislative record, in addition to the design of the statute, of a preference for institutional investors.

Again, if he was way out ahead and had answered all the questions, clearly had a much more significant financial interest, maybe that's not as relevant. But here we think that because you have a qualified candidate, there's no reason to saddle the class with that risk and uncertainty.

But at the very least, we would request, if the

Court was inclined to point -- appoint Mr. Schammas, to appoint the pension fund alongside him because I think that would mitigate these concerns.

And we've cited half a dozen cases where the Courts have done that in circumstances where there was much more significant loss differentials on a percentage and a dollar basis, and they do it precisely in circumstances like this where there are these real concerns, practical concerns.  Because at this stage in looking for the most adequate plaintiff, the Court is really trying to determine who is going to best represent the class.

Mr. Grunfeld is correct.  It's not full-blown class certification, but it's kind of the prelude.  And the idea behind this PSLRA is get the right champion on the front end, and that will be -- that will best serve the class down the road.

And Mr. Grunfeld's representation that Mr. Schammas does not want this, I think, to me, that just raises typicality and adequacy concerns.  Because if I was an individual investor living in Argentina, why would I not want an experienced pension fund who filed the case and clearly has knowledge about the case, conducted an investigation, has factual knowledge about the case, why would I not want them working with me?  I mean, frankly, it's unclear why he would want to even be lead plaintiff

when you have this other candidate. But if you really, really want -- and the inconvenience that is obviously going to occur for him, why would you not want a partner like that?

And, to me, that means there's one of two possibilities. One, he's either not fully informed about the situation and the choice; or, two, he's not really directing the litigation, and that is something that the PSLRA was designed to avoid, in other words, that his lawyers are really making that determination.

And the Pomerantz firm is a great firm. I mean, we work with them all the time. We have numerous cases where we're co-lead counsel together. We've been very successful together. And I'm sure Mr. Grunfeld would agree in all of those cases, we've been very successful at avoiding duplication of efforts. So we could do so here.

And it's -- and it's not -- it's a complex case. It is a large case. It's not the largest, but it is a large, complicated case. And so we would request either, we believe, that the Court would be well within its discretion, well within the case law and the statutory framework to appoint the pension fund sole lead plaintiff and avoid these complexities and risks. But, at the very least, we would request, respectfully, that there would be a co-lead appointment, Your Honor.

THE COURT:  Thank you.

Mr. Grunfeld, you certainly can use your rebuttal time and you can respond to the foreign procedure, foreign discovery.  I'm not concerned about language barriers here. Obviously I've received declarations in English.  And even if there were differences in language, I think we have ways to deal with that.  But the procedure and how things could take place in Argentina, and we're not going to have the Zoom hearings, you know, if COVID is under control here.  So I'm just curious about your response on the ability to participate and the -- getting discovery in Argentina.

MR. GRUNFELD:  Thank you, Your Honor.  We don't see any hurdles whatsoever to discovery and Mr. Schammas' ability to participate in this litigation.  It's a very different story when you're trying to get discovery from a non-party in a foreign country.  But Mr. Schammas, if he's appointed lead plaintiff, would be a party to this case, and his declaration makes clear that he wants to participate in the case and to oversee the litigation and to take an active role.  So there would be no need to go through the Hague Convention.  Mr. Schammas would be willingly submitting to discovery.

So the only obstacle that -- not an obstacle, but the only factor to consider is just purely the logistical issue of distance.  But that could be true in the U.S. as

well.  You can have travel from coast to coast that is a long flight.  I don't know any -- in today's modern world, putting aside the constraints of the pandemic, there's no reason why Mr. Schammas wouldn't be able to travel to the U.S. as necessary for the litigation, on top of which, as we all know, and as this hearing demonstrates, a lot of things can happen remotely, and depositions typically do happen remotely these days.

But even putting that aside, Mr. Schammas' desire and effort to participate in this litigation shows that he's not going to put up any artificial hurdles from a discovery perspective.  And the bulk of discovery also will come from the defendants.  The limited discovery in this case from the plaintiffs will relate to class certification, and Mr. Schammas' willingness to actively participate in that should obviate any concerns.

THE COURT:  Now, I noted that in his declaration that was submitted, he said that he has served or has moved to serve as a lead plaintiff in the *360* case, but I don't think he is serving as a lead plaintiff, is he?

MR. GRUNFELD:  That's right.  He was not appointed as the lead plaintiff in that case.

THE COURT:  One of the things you might be able to help me with is looking at the difference between a plaintiff who holds the shares versus a plaintiff who sells

the shares.  And does that create any different incentives that would apply to each type of plaintiff in looking at settlement?

MR. GRUNFELD:  Thank you, Your Honor.  I was going to raise that as well.  Mr. Schammas held -- continued to hold his shares through the duration of the 90 days after the class period as opposed to Steamfitters that sold the vast majority of their shares in -- and I'm just looking up the dates -- in June of 2021.  And that actually would create an issue down the line.  If anything, it could create potential unique defenses against Steamfitters.  By my calculation, they still held a handful of shares but sold, I think, over 90 percent of their shares in June of 2021.  The complaint, however, alleges that key events happened in July of 2021, at which point Steamfitters would have very little interest in that portion of the case.  Mr. Schammas, on the other hand, has an equal interest in the entirety of the case because he held his shares.  That type of unique defense issue is the type of issue that Courts will consider to favor one lead plaintiff movant over another.

THE COURT:  And if your client -- if it turns out that your client does have some type of -- had some type of other options transactions as a hedge, wouldn't that come into play as some type of unique defense?

MR. GRUNFELD:  Well, just to back up for a moment,

I don't -- the only basis that the Steamfitters raises to think that's the case is that -- some events from some other case entirely separate from here.  It's really entirely speculative.  There's no reason to think that that's a concern here.

But even if there were some other options transactions, those are just separate transactions.  Those shouldn't affect the losses that Mr. Schammas had in Steamfitters' -- excuse me -- in Sleep Number stock.  For example, as I noted earlier, we don't know whether Steamfitters hedged their investment in some other way.  But the more important point is that other investments, unrelated to the investments at issue in this case, are just not relevant to the damages that are alleged in this case.

THE COURT:  That doesn't create the unique defense?

MR. GRUNFELD:  Not that I'm aware of, Your Honor.

THE COURT:  All right.  Thank you.  And I interrupted you so feel free to continue.

MR. GRUNFELD:  Thank you.  I wanted to address briefly some of the other points that Mr. Cochran made.

At bottom, all of the concerns that Steamfitters is raising against Mr. Schammas are really entirely speculative, not based on any evidence that they are pointing to, other than the fact that he is an individual as

opposed to an institutional investor.

Putting aside the geography issue that we discussed earlier, all of the arguments that Steamfitters is raising really could be raised in any case where you have an institution and a competing individual investor trying to be lead plaintiff. According to Steamfitters' argument, you would never have a case where an individual is appointed as the sole lead plaintiff when there's a competing institution seeking to be lead plaintiff as well. But that's just not the case. The case law that we cite shows that Courts do appoint individuals as the sole lead plaintiff when they satisfy the PSLRA requirements as Mr. Schammas does here.

In almost all of the cases that Steamfitters cites, there's other special factors that the Court looked at. For example, in some cases, the individual was part of a group of individuals. And so there was no single individual that had a larger loss than the institution. It was only individuals as a group, as opposed to here where Mr. Schammas alone has a larger loss. That, for example, was the situation in the *Endo* case that Mr. Cochran cited.

In other cases, there were concerns about unique defenses. Really, at bottom, Mr. Cochran is making an argument for always appointing the institution over the individual, and that is just not supported by the law.

Another factor that Mr. Cochran pointed to was

that Steamfitters filed this case.  But that is also not a legally relevant factor that favors the original plaintiff over a movant who has a larger loss.  If anything, all it means is that Steamfitters can still be considered to be the lead plaintiff even though it didn't file a motion to be appointed lead plaintiff.  That was really the way that Steamfitters raised that issue in its briefing.  But Steamfitters didn't even file a motion to be appointed lead plaintiff here.  The fact that it filed the original complaint doesn't favor it over Mr. Schammas who has a larger loss.

It's also important to consider not only the absolute difference in the losses but the proportion. Mr. Schammas' loss is over twice the loss that Steamfitters has in this case.  It's -- that's really the most significant factor in terms of comparing the size of the loss because the size of the loss also relates to the size of the case.  The institution shouldn't be favored just based on the relative size of the case when Mr. Schammas had over twice the amount of the loss that Steamfitters did here.

And then just -- I also wanted to address some of the details from the cases that Mr. Cochran referenced.  I mentioned the *Endo* case already.  Mr. Cochran also referenced the *BRF* case.  But that's also another example

where there was no single competing movant that had a larger loss than the institution.  In that case also, the Court determined that the institution actually did have the largest loss because it wasn't comfortable combining the losses of the two competing movants.

Here, in contrast, there's no group of individuals or competing movants that are seeking to combine their losses in comparison to Steamfitters.  It's purely Steamfitters' approximately $6,000 loss as compared to Mr. Schammas' approximately $4,000 loss.  That's a significant factor.  It's not a mere technicality.  Because when there are a group of individuals that are seeking to pool their losses together, then there's -- each of them on an individual basis has less of an interest in the case. Here, in contrast, it's Mr. Schammas alone who has a larger interest in the case than does Steamfitters.

Your Honor, I don't have any further points to make, but I'm happy to answer any additional questions that Your Honor has.

THE COURT:  How do you distinguish the *Malasky* case?

MR. GRUNFELD:  The *Malasky* case is one where the proportion of the loss was relatively close.  And so while the absolute amounts were larger, just because they were dealing with larger absolute amounts, it was only

approximately a 10 percent differential in loss size.  I believe it was approximately $700,000 in losses for the individual as compared to approximately $630,000 in losses for the individual.  So that differential was just a small fraction of the overall losses, again, here, as compared to Mr. Schammas who has over twice the amount of Steamfitters' loss.

And then I would also note that putting that case aside, the other cases that Steamfitters cites don't even rise to that level because they deal with the types of situations I was referencing before where it was an institution as compared to a group of individuals or other special factors like that.

THE COURT:  Thank you.

Mr. Cochran?

MR. COCHRAN:  Thank you, Your Honor, Brian Cochran.  Just a couple very brief points just picking up on the last discussion regarding kind of the percentage versus absolute dollar difference.  I think if you read the cases, they are almost invariably referring to the dollar amount. The financial interest is based on the outcome of the litigation, which is paid in dollars.  And by Mr. Grunfeld's logic, you know, $2 is way more than $1 because it's 100 percent more.  That's not the test.  That's not what Courts are looking at.

But even on the percentage basis, you have cases like *First Bancorp* -- it's a great example -- where the institutional investor had a relatively de minimis loss and was way below the individuals, but the Court, acknowledging the preference for institutional investors codified in the PSLRA, appointed an institution co-lead.

And while there's lots of reference and attempts to kind of distinguish the case law, if you look at the filing for Mr. Schammas, it's notably light on cases supporting his position. And, in fact, even those cases acknowledge that institutional investor status should be considered.

I'll take the *Texlon* case. As an example, there the Court says, That is not to say, however, that a person's status as an institutional investor should not be taken into account at all. Clearly, it should be considered. And this is at 822 of the decision. So it is very much part of the determination, and I would respectfully disagree with the characterization that Mr. Schammas does not have typicality and adequacy concerns.

I think we have covered, at least from our perspective, the numerous issues that we see. I believe defense counsel is probably taking notes of issues that, you know, will be coming up later on in class certification. So I think this is squarely in line with cases where there are

potential problems.  Again, it's just potential problems that could be enough to have a relatively de minimis loss go to the institutional investor.

And it is an inaccurate characterization of our position that institutions should always be appointed over individuals.  I believe in my prepared remarks, I made the point that actually that's not what we are arguing.  Certainly if Mr. Schammas had showed up with significant losses, we would not have the same concerns.  And the loss differential, if it was much higher, we would not have the same concerns if he did not live in Buenos Aires, which is a relatively inaccessible part of the world.  It is much more inaccessible than, for example, Europe.  It's just the nature of kind of the travel hubs.  It takes an inordinate amount of time to get down there or to get up here conversely.

So the case before Your Honor we would respectfully submit is squarely in line with cases that have acknowledged those types of issues and have either appointed an institutional investor outright or, at the very least, appointed co-lead plaintiffs.

THE COURT:  Can you also respond to the question that I posed to Mr. Grunfeld about the incentives of each type of plaintiff?  We've got a plaintiff, Mr. Schammas, who purchased shares and has held them, and we've got a

plaintiff, Steamfitters, purchasing and selling along the way during the class period. Can you respond to the points that Mr. Grunfeld made about why, in Mr. Schammas' view, that the differences make Mr. Schammas a better lead plaintiff than Steamfitters?

MR. COCHRAN: Certainly, Your Honor. So the claims alleged in the case are purchaser claims. So they arise from the purchase of the security rather than the holding of the security. And the case law is well-established that whether you buy, sell, hold, Mr. Schammas could sell in the future, it doesn't impact the incentives to do an effective job in leading the case.

One of the reasons for that is because your losses on held shares are set by reference to what's called the plug price. So there's a 90-day lookback. So once you get beyond that period, your losses are essentially locked in, so you can do whatever you want with those shares. You can even buy back in because at that point, you may, as an investor, rationally decide, Well, now that the truth is out, the stock is fairly valued.

So it's absolutely incorrect to say that that is something that whether you currently bought and hold or do not hold would provide a different incentive at settlement. This case is not going to settle within 90 days. I think we're already well past that period. So all of those losses

are kind of baked in.

Now this idea that you have to have, you know, held through every statement and every drop, not only is that not the law, the law is clear that the lead plaintiff does not even need to have all of the claims. So there are other cases where the lead plaintiff does not have standing for a particular claim but they are still determined to be the most adequate plaintiff. That's something that can get cleaned up later on on an amended pleading or a class certification.

Here we don't have anything remotely like that. Clearly both plaintiffs have standing to represent the whole class. They are highly incentivized to get the best result possible, and issues of allocation will be dealt with through notice, Rule 23 procedures, and have to be supported by the lead plaintiff at that time; that it's fair, adequate, that the plaintiff was typical. And those kind of issues are not really something that come into effect when you are at settlement approval unless you have some very, very strange facts that we're not dealing with here.

THE COURT: Thank you. Well, this has been very helpful. I know each of you have a few minutes left, so, Mr. Grunfeld, any final word?

MR. GRUNFELD: Yes. Thank you very much, Your Honor. Just first one technical point. On the *Bancorp*

case that Mr. Cochran noted, the Court in that case actually said expressly that it was dealing with unusual circumstances based on the very little amount of background that the individual had and also possible unique defenses. Here, in contrast, I would encourage Your Honor to read again the declaration that Mr. Schammas submitted.  He has said that he has over 20 years' experience investing in the stock market and also is a lawyer, which would add great value to the lead plaintiff overseeing the case.

On the point about the sale dates that Mr. Cochran noted, I would just differentiate between issues of standing that could come up on a motion to dismiss.  And we completely agree that a lead plaintiff doesn't need to have standing for the entire case for the case to proceed, but that issue is very different than at this earlier stage of the case who should be appointed the lead plaintiff.  And it just makes sense to appoint as a lead plaintiff the plaintiff that actually has the interest in the entire case as opposed to a lead plaintiff who sold over 90 percent of their shares before the final stock drop in July of 2021 and, therefore, would not want potential settlement funds to be allocated in the same way to that part of the case.

Just to conclude, stepping back, Your Honor, the last point I would like to make is it's important to consider what Mr. Schammas has represented that he wants to

do to represent the class in this case.  Mr. Cochran says that he's not opposed to all individual investors representing the class and being a lead plaintiff, but when you read Mr. Schammas' declaration, it's very clear that he has an understanding of what this case is about.  He's a lawyer.  He understands his duties to the class.  He understands the need to oversee the case.  If Mr. Schammas isn't qualified to be a sole lead plaintiff in this case, I can't think of an individual investor who would be.

Thank you, Your Honor.

THE COURT:  Thank you.

Mr. Cochran, you have a couple minutes left.  Any final words?

MR. COCHRAN:  Thank you, Your Honor, Brian Cochran.  So just to pick up on the last comment from Mr. Grunfeld, I would say that we respectfully disagree.  I think we all kind of agree on the facts, his location.  We don't really know his full financial interest, but those questions -- we've dealt with a lot of ifs.  Again, that's something that was expressly raised in the briefings.  Could have been pretty easily answered and still has not been answered.

And the relatively small losses compared to some of these other cases, we're talking hundreds of thousands of dollars in losses.  You put all of that together,

respectfully, we would say that this is precisely the type of typicality and adequacy issues that Courts deal with all of the time in declining to appoint individual investors lead plaintiff and/or appointing institutional investors.

And while Mr. Schammas did put in a declaration that was in all likelihood drafted by the lawyers or certainly the lawyers assisted him with that, what he has not said, through counsel or otherwise, is why he would be opposed to serving alongside of an institutional investor that has information relevant to the case and has served as an experienced fiduciary. And, to me, as much as anything discussed today, that is a major red flag that perhaps he is not fully informed or he is not directing the litigation, which I think could become a problem given the geographic distance and his relatively small losses, Your Honor.

THE COURT: Well, don't individuals -- Number One, I'm not questioning his declaration as not being a declaration that he stood behind because lawyers may have had a role in it. I don't want to be silent indicating that that's something that the Court is looking at. I'm looking at the content of the declaration and whether or not the content of the declaration informs me of anything relevant to the analysis, but I asked why the opposition. But, you know, the opposition I'm not challenging as something that, you know, doesn't happen or it's unusual that you would not

agree with co-leadership or agree that another party should take on the role. So I just want to make sure that there's -- my silence on that isn't suggesting that I think there's something wrong with opposing the position that Steamfitters is taking.

MR. COCHRAN: And, Your Honor, to clarify, we're not questioning the declaration in any way that he's not standing behind it. My only point was that it's just -- it's very unusual. This is something that you'll see in the case law that's at kind of top of mind when doing the lead plaintiff appointment is the individual's ability to kind of oversee and monitor the lawyers and who's kind of really calling the shots. That's kind of something that is really a focus of the inquiry.

So that was the only question that I think, at least to me, has not really been answered. As I mentioned, we worked with the Pomerantz firm. We're working with them now in I think multiple cases, and we've done so very effectively, so...

THE COURT: Thank you. Well, I reviewed the -- I think most of the cases before the hearing today. I'll look at them again with the benefit of hearing oral argument today and take the matter under advisement. And I will give you my decision as soon as I can.

MR. COCHRAN: Thank you, Your Honor.

MR. GRUNFELD:  Thank you, Your Honor.

THE COURT:  Is there anything -- Mr. Neuwirth, is there anything that you feel that you need to put on the record?

MR. NEUWIRTH:  No, Your Honor, but thank you for the opportunity.

THE COURT:  Thank you.  Anything further, Mr. Grunfeld?

MR. GRUNFELD:  Just on this last point, I mean, maybe it's not necessary because it's repeating what Your Honor said, but it might be going a little too far to say I'm personally offended, but Mr. Cochran shouldn't be making speculative suggestions about looking behind the words that Mr. Schammas put in his declaration. Mr. Schammas is pretty clear in his declaration about his experience and his background and his understanding of the case and the effort that he'll put in, and those are attestations that he's made in his signed declaration.  And there's really no basis for Mr. Cochran to question that or to question Pomerantz's role and relationship with Mr. Schammas.

THE COURT:  Mr. Cochran, anything further?

MR. COCHRAN:  No, Your Honor, other than to say I just want to be clear, we're absolutely not -- I'm not intending to do that in any way.  So apologies if that was

not clear.  But I do think it is appropriate to question who is directing the litigation.  I think that's well within the bounds of what the PSLRA, in fact, requires.  So that's all.  And I think it is an appropriate course of inquiry.  Nothing about the declaration, I think, we are challenging today.  So thank you, Your Honor.

THE COURT:  Very good.  Well, thank you everyone for your presentations, and thank you for responding to my questions.  Again, I'll take the matter under advisement.  I'll review everything very carefully and give you my decision when I can.  Thank you.  We are in recess.

(Court adjourned at 10:39 a.m.)

*       *       *

I, Erin D. Drost, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter to the best of my ability.

Certified by:  *s/ Erin D. Drost*

Erin D. Drost, RMR-CRR