UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Steamfitters Local 449 Pension & Retirement Security Funds, *Individually and on Behalf of All Others Similarly Situated*, | Civ. No. 21-2669 (PJS/BRT) |
| Plaintiff, | |
| v. | **ORDER** |
| Sleep Number Corporation; Shelly R. Ibach; and David R. Callen, | |
| Defendants, | |
| and | |
| Ricardo Dario Schammas, | |
| Movant. | |

---

Brian Cochran, Esq., Robbins Geller Rudman & Dowd, LLP; Francis Paul McConville, Esq., Labaton Sucharow LLP; and Karen Hanson Riebel, Esq., Lockridge Grindal Nauen PLLP, counsel for Plaintiff.

Bret A. Puls, Esq., Fox Rothschild LLP, John A. Neuwirth, Esq., and Stefania Di Trolio Venezia, Esq., Weil Gotshal & Manges LLP, counsel for Defendants.

Michael Grunfeld, Esq., Joseph Alexander Hood, II, Esq., and Jeremy Alan Lieberman, Esq., Pomerantz LLP; Robert J. Gilbertson, Esq., Matthew D. Forsgren, Forsgren Fisher McCalmont DeMarea Tysver LLP, and Peretz Bronstein, Esq., Bronstein, Gerwitz & Grossman, LLC (NY), counsel for Movant.

_____

This matter is before the Court on Movant Ricardo Dario Schammas's ("Shammas") Motion for Appointment as Lead Plaintiff and for Approval of Lead and Liaison Counsel pursuant to Section 21D(a)(3), as amended by Private Securities

Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u–4(a)(3)(B)(ii). (Doc. No. 15.) Plaintiff Steamfitters Local 449 Pension & Retirement Security Funds ("Steamfitters") opposes Schammas's motion and contends that Steamfitters is the most adequate plaintiff. (Doc. No. 26.) Alternatively, Steamfitters requests that it be made a co-lead plaintiff with Schammas if the Court decides to appoint Schammas. The Court held a hearing on March 24, 2022, and heard argument from Schammas and Steamfitters. (Doc. No. 40.) For the reasons set forth below, the Court appoints Schammas and Steamfitters as co-lead plaintiffs and approves the selection of lead counsel as long as no work is duplicated.

## I.     BACKGROUND

On December 14, 2021, Plaintiff Steamfitters filed a securities class action against Sleep Number and certain senior executives under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), ("Exchange Act"), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. (Doc. No. 1, Compl.) Steamfitters alleges that Defendants made false and misleading statements, which eventually led to Steamfitters and other class members who purchased common stock in Sleep Number between February 18, 2021 and July 20, 2021, to suffer "significant losses and damages for which they seek redress." (Compl. 13.) The same day it filed its Complaint, Steamfitters, pursuant to § 21D(a)(3)(A)(i) of the PSLRA, published a notice announcing this action had been filed against Defendants and advised investors in Sleep Number securities that they had sixty days to file a motion to be appointed as lead plaintiff.

Pursuant to Steamfitters's notice, Schammas (who purchased Sleep Number securities during the Class Period) filed his motion for appointment as lead plaintiff. (Doc. No. 15.) In his motion, Schammas makes two requests. First, he asks the Court to appoint him as lead plaintiff on behalf of all persons who purchased or otherwise acquired the securities of Sleep Number between February 18, 2021 and July 20, 2021. (*Id.*) Second, Schammas requests the Court approve his selection of Pomerantz LLP as lead counsel and Forsgren Fisher McCalmont DeMarea Tysver LLP as liaison counsel. (Doc. No. 15.) Steamfitters opposes.

## II.     ANALYSIS

### A.     Appointment of Lead Plaintiff

The first question presented to the Court is who should be appointed lead plaintiff in this litigation. On the one hand, Schammas argues that he should be appointed lead plaintiff because he has the largest financial interest in the outcome of the litigation and satisfies the requirements of typicality and adequacy of representation under Rule 23 of the Federal Rules of Civil Procedure. (Doc. No. 17 at 8–13.) On the other hand, Steamfitters argues it should be the lead plaintiff because, even though Schammas may have "suffered a numerically larger loss," the difference in loss is "minimal" and that, as an institutional investor, it is the "paradigmatic lead plaintiff candidate." (Doc. No. 26 at 2–4.)

The PSLRA directs the Court to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable or adequately representing the interests of the class members." 15 U.S.C. § 78u–

3

4(a)(3)(B)(i); *see also Chill v. Green Tree Fin. Corp.*, 181 F.R.D. 398, 407 (D. Minn. 1998). "This grant of authority to Courts . . . was intended to stem the influence of 'professional plaintiffs' who frequently appear as named plaintiffs, and to 'empower investors so that they, not their lawyers, control private securities litigation,' by allowing the Court to ensure the transfer of 'primary control of private securities litigation from lawyers to investors.'" *Chill*, 181 F.R.D. at 407 (citing Senate Rep. No. 104–98, 104th Cong., 1995 U.S.C.C.A.N. 679, 683, 685).

In selecting the group of class members who are the most capable of adequately representing the class, the Court adopts a rebuttable presumption that the most adequate plaintiff is the person or group of persons that:

> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(1);
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u–4(a)(3)(B)(iii)(I). This presumption may be rebutted only with proof by a member of the purported class that the presumptively most adequate plaintiff:

> (aa) will not fairly and adequately protect the interests of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).

4

### i.      Applying the PSLRA's presumption

Schammas satisfies the PSLRA's first requirement under (aa); Steamfitters filed the Complaint and Schammas timely filed his motion after Steamfitters published a notice over *Business Wire*.[1] (Doc. No. 17 at 9.)

The Court thus turns to the second requirement, (bb), which identifies the plaintiff with the largest financial interest in the relief sought by the class. Courts in this district have adopted the following four-factor test to assess a candidate's interest:

(1) the number of shares purchased during the class period;

(2) the number of net shares purchased during the class period;

(3) the total net funds expended during the class period; and

(4) the approximate losses suffered.

*Mart v. Tactile Sys. Tech., Inc.*, No. 20-CV-2074 (NEB/BRT), 2021 WL 321624, at *1 (D. Minn. Feb. 1, 2021) (applying *Lax v. First Merchants Acceptance Corp.*, No. 97 Civ. 2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997)). The fourth factor—approximate losses suffered—is often assigned the greatest weight. *See Baughman v. Pall Corp.*, 250 F.R.D. 121, 125 (E.D.N.Y. 2008).

The first factor in the test weighs in favor of Steamfitters who has a greater number of shares purchased during the class period than Schammas. The parties offered

---

[1]     There is no dispute that Steamfitters caused the notice to be published pursuant to PSLRA's section 21D(a)(3)(A)(i) or that Schammas's motion was timely.

no calculations corresponding to the second and third factors. Thus, these factors are neutral to both parties.

As noted above, the fourth factor is "considered to be the most important" and is given the greatest weight. *See Atanasio v. Tenaris S.A.*, 331 F.R.D. 21, 26–29 (E.D.N.Y. 2019) (finding that "[a]lthough [the institutional investor plaintiff] purchased a greater number of total and net shares during the class period and expended a greater amount of net funds, [the movant individual investor] has a greater loss" and thus had the largest financial interest); *see also Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 478–79 (S.D.N.Y. 2011) ("Most courts agree that the largest loss is the critical ingredient in determining the largest financial interest and outweighs net shares purchased and net expenditures."). Schammas calculates his approximate loss at $14,599 (Doc. No. 18-1 at 2), while Steamfitters calculates its approximate loss at $6,056. (Doc. No. 32 at 2.) Because Schammas's loss is greater, the fourth factor weighs in favor of Schammas. And because the fourth factor is given the greatest weight, Schammas has the largest financial interest pursuant to (bb), the second requirement.

The Court next turns to the third and final requirement—(cc)—which concerns whether the person with the largest financial interest (i.e., Schammas) can otherwise satisfy "the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I). Here, "the Court considers only whether the proposed plaintiff has made a *preliminary showing* that two of Rule 23's requirements—typicality and adequacy—are satisfied." *Atanasio*, 331 F.R.D. at 29 (quotations omitted) (emphasis added). Thus, "the first subsection requires only a *prima facie* showing that the movant

6

with the largest losses satisfies Rule 23." *In re Cendant Corp. Litig.*, 264 F.3d 201, 264 (3d Cir. 2001).

"Typicality is satisfied where the claims arise from the same course of events and each class member makes similar legal arguments to prove defendant's liability." *Atanasio*, 331 F.R.D. at 29 (quotations omitted). "Adequacy of a proposed lead plaintiff turns on whether that plaintiff will fairly and adequately protect the interests of the class." *Id.* (quotations omitted). "[T]he court's initial inquiry as to whether the movant with the largest losses satisfies the typicality and adequacy requirements need not be extensive." *In re Cendant Corp. Litig.*, 264 F.3d at 264.

As to typicality, Schammas alleges, like all class members, that Defendants violated the Securities Act and Exchange Act by making false or misleading statements of material facts and/or omitting to disclose material facts concerning Sleep Number during the class period. In addition, as did all members of the class, Schammas purchased Sleep Number securities during the class period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions and was damaged by the disclosures of those misrepresentations and/or omissions that drove Sleep Number's stock price downward. These facts demonstrate that Schammas's claims arise from the same course of events and that he makes similar legal arguments to other class members to prove Defendants' liability. As to adequacy, Schammas has suffered losses that ensure he will fairly and adequately protect the interests of the class by seeking recovery. Thus, based on these facts, the Court finds Schammas has made a prima facie showing that his interests align enough with the class. Accordingly, Schammas is presumptively the most

7

adequate lead plaintiff because he has satisfied the PSLRA's three presumption requirements under 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I).

Steamfitters, however, argues that the Court should appoint Steamfitters as lead plaintiff over Schammas because of the PSLRA's "preference for institutional investors with experience serving as lead plaintiff in complex cases like this." (Doc. No. 26 at 4.) In stating its preference for institutional investors, Congress, however, was concerned with *professional plaintiffs*. Consideration of the legislative history is informative as to what Congress intended:

> House and Senate Committee hearings on securities litigation reform demonstrated the need to reform abuses involving the use of "professional plaintiffs" and the race to the courthouse to file the complaint.
>
> Professional plaintiffs who own a nominal number of shares in a wide array of public companies permit lawyers readily to file abusive securities class action lawsuits. Floor debate in the Senate highlighted that many of the "world's unluckiest investors" repeatedly appear as lead plaintiffs in securities class action lawsuits. These lead plaintiffs often receive compensation in the form of bounty payments or bonuses.
>
> The Conference Committee believes these practices have encouraged the filing of abusive cases. Lead plaintiffs are not entitled to a bounty for their services. Individuals who are motivated by the payment of a bounty or bonus should not be permitted to serve as lead plaintiffs. These individuals do not adequately represent other shareholders-in many cases the "lead plaintiff" has not even read the complaint.
>
> The Conference Committee believes that several new rules will effectively discourage the use of professional plaintiffs.
>
> . . . .
>
> The Conference Committee was also troubled by the plaintiffs' lawyers "race to the courthouse" to be the first to file a securities class action complaint. This race has caused plaintiffs' attorneys to become fleet of foot and sleight of hand. Most often speed has replaced diligence in drafting

> complaints. The Conference Committee believes two incentives have driven plaintiffs' lawyers to be the first to file. First, courts traditionally appoint counsel in class action lawsuits on a "first come, first serve" basis. Courts often afford insufficient consideration to the most thoroughly researched, but later filed, complaint. The second incentive involves the court's decision as to who will become lead plaintiff. Generally, the first lawsuit filed also determines the lead plaintiff.
>
> The Conference Committee believes that the selection of the lead plaintiff and lead counsel should rest on considerations other than how quickly a plaintiff has filed its complaint. As a result, this legislation establishes new procedures for the appointment of the lead plaintiff and lead counsel in securities class actions in new section 27(a)(3) of the 1933 Act and new section 21D(a)(3) of the 1934 Act.
>
> . . . .
>
> The Conference Report seeks to restrict professional plaintiffs from serving as lead plaintiff by limiting a person from serving in that capacity more than five times in three years. Institutional investors seeking to serve as lead plaintiff may need to exceed this limitation and do not represent the type of professional plaintiff this legislation seeks to restrict. As a result, the Conference Committee grants courts discretion to avoid the unintended consequence of disqualifying institutional investors from serving more than five times in three years. The Conference Committee does not intend for this provision to operate at cross purposes with the "most adequate plaintiff" provision. The Conference Committee does expect, however, that it will be used with vigor to limit the activities of professional plaintiffs.

H.R. CONF. REP. 104-369, H.R. Conf. Rep. No. 369, 104TH Cong., 1ST Sess. 1995, 1995 U.S.C.C.A.N. 730, 1995 WL 709276 (Leg. Hist.).

It is evident from this legislative history that Congress's intent was to *increase the likelihood* that institutional investors would serve as lead plaintiffs over professional plaintiffs; this intent, however, does not change the plain language of the PSLRA, which presumes the most adequate plaintiff is the plaintiff that meets the three requirements

9

under 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I).[2] Indeed, none of the cases cited by Steamfitters holds that an institutional investor with an approximate loss of $6,056—even if labeled *preferred*—should automatically trump the rights of an individual investor who has satisfied the requirements under subclause I for *presumed* lead plaintiff status.[3] Instead,

---

[2] "The institutional investor is not presumptively the most adequate plaintiff solely by virtue of its status as an institutional investor." *In re Texlon Corp. Secs. Litig.*, 67 F. Supp. 2d 803, 820–22 (N. D. Ohio 1999). "If that were the case, Congress would have simply provided that institutional investors are presumptively the most adequate plaintiffs, regardless of the size of financial loss, and saved the Court from the need to engage in the very analysis it undertakes here." *Id.*

[3] The House and Senate managers of the Conference Committee submitted a joint statement that states that the legislature sought to increase the likelihood that institutional investors would serve as lead plaintiffs by presuming the most adequate plaintiff would be that plaintiff which had the largest financial stake:

> The current system often works to prevent institutional investors from selecting counsel or serving as lead plaintiff in class actions. The Conference Committee seeks to increase the likelihood that institutional investors will serve as lead plaintiffs by requiring courts to presume that the member of the purported class with the largest financial stake in the relief sought is the "most adequate plaintiff."
>
> The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions. Institutional investors are America's largest shareholders, with about $9.5 trillion in assets, accounting for 51% of the equity market. According to one representative of institutional investors: "As the largest shareholders in most companies, we are the ones who have the most to gain from meritorious securities litigation."
>
> Several Senators expressed concern during floor consideration of this legislation that preference would be given to large investors, and that large investors might conspire with the defendant company's management. The Conference Committee believes, however, that with pension funds accounting for $4.5 trillion or nearly half of the institutional assets, in many cases the beneficiaries of pension funds-small investors-ultimately have the

the PSLRA permits that "the presumption may be rebutted by evidence that the plaintiff would not fairly and adequately represent the interests of the class or is subject to unique defenses." 15 U.S.C. Section 78u-4(a)(3)(B)(iii)(II).

In sum, the Court finds that Schammas meets the PSLRA's three presumption requirements under 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I), and that the PSLRA's preference for institutional investors does not supplant the PSLRA's presumption requirements. Accordingly, Schammas is presumptively the most adequate lead plaintiff.

### ii. Steamfitters's rebuttal of the PSLRA's presumption

Having found Schammas is presumptively the most adequate lead plaintiff, the burden lies with Steamfitters to rebut Schammas's presumptive status by offering proof

---

greatest stake in the outcome of the lawsuit. Cumulatively, these small investors represent a single large investor interest. Institutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake. The claims of both types of class members generally will be typical.

The Conference Committee recognizes the potential conflicts that could be caused by the shareholder with the "largest financial stake" serving as lead plaintiff. As a result, this presumption may be rebutted by evidence that the plaintiff would not fairly and adequately represent the interests of the class or is subject to unique defenses. Members of the purported class may seek discovery on whether the presumptively most adequate plaintiff would not adequately represent the class. The provisions of the bill relating to the appointment of a lead plaintiff are not intended to affect current law with regard to challenges to the adequacy of the class representative or typicality of the claims among the class.

PSLRA Joint Explanatory Statement of the Committee of Conference, 25 Securities Prac. Fed. & State Enforcement Appendix 2G.

that Schammas "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).

Steamfitters asserts "overarching concern[s]" about Schammas's candidacy, which Steamfitters believes pose "real risks to the class." (Doc. Nos. 26 at 5, 33 at 4.) For example, Steamfitters is concerned that any "multiple trading accounts" Schammas might have or "options transactions" Schammas might have entered into "as an apparent hedge against his long stock positions" might change the calculation of Schammas's true financial interest or create a unique defense. (Doc. No. 26 at n.2.)[4] Steamfitters also argues that Schammas's modest financial interest as in individual investor may not provide sufficient incentive for him to vigorously litigate on behalf of the class. In addition, Steamfitters questions Schammas's ability and incentive, as a resident in Buenos Aires, Argentina, to travel to Minnesota to attend court proceedings, depositions, settlement conferences, hearings, and trial throughout the case. (Doc. No. 43 at 21.) Steamfitters questions the ability to take discovery in Argentina, which it believes will

---

[4] Schammas's Certification states that during the three-year period preceding the date on which he signed the Certification, he served or sought to serve as a representative party on behalf of a class under the federal securities laws in another securities case entitled "*In re 360 DigiTech, Inc. Sec. Litig.*, No. 1:21-cv-06013 (S.D.N.Y.)." (Doc. No. 18-3.) In that case, Schammas had multiple trading accounts and also entered into options transactions as an apparent hedge against his long stock positions. *See In re 360 DigiTech, Inc. Sec. Litig.*, No. 1:21-cv-06013 at Doc. No. 19-2. Here, Schammas disclosed stock transactions in a single account. (Doc. No. 18-3.) He has not affirmed or denied any such transactions related to his Sleep Number stock. Steamfitters' speculation about Schammas's accounts is not proof and Steamfitters has taken no steps to obtain discovery.

12

"add complexity" to the case. (*Id.*) Steamfitters claims Schammas "knows nothing" about how to "oversee counsel in prosecuting a complex securities class action" (Doc. No. 33 at 4), and that he has no apparent "prior experience . . . leading securities litigation or any other type of shareholder litigation." (Doc. No. 43 at 20.)

None of Steamfitters's concerns, however, operate as *proof* that Schammas cannot fairly and adequately protect the interests of the class or render him incapable of adequately representing the class. The "mere risk" that issues may arise in litigation is insufficient. *OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, 63 F. Supp. 3d 394, 407 (D. Del. 2014). The PSLRA "requires more than mere assertions in order to rebut the presumptive lead plaintiffs' status." *Soto v. Hensler*, 235 F. Supp. 3d 607, 620 (D. Del. 2017) (quotations omitted). Steamfitters must put forward "actual proof" that Schammas is an inadequate representative of the class. *Id.* Here, Steamfitters has offered speculations and concerns, which does not satisfy Steamfitters's burden to offer proof that Schammas is an inadequate representative of the class. Thus, Schammas is eligible for appointment as a lead plaintiff.

### iii. Steamfitters's request to join Schammas as co-lead plaintiff

In the alternative, Steamfitters seeks to join Schammas as a co-lead plaintiff if this Court should appoint Schammas. Under the PSLRA, the Court shall appoint as lead plaintiff(s), the member or members of the class that it "determines to be most capable of adequately representing the interests of the class members." 15 U.S.C. § 78u-4(a)(3)(B). There is no "arbitrary limit on the number of proposed" lead plaintiffs the Court may appoint. *Chill*, 181 F.R.D. at 409; *see also Tice v. Novastar Fin., Inc.*, No. 04-0330-CV-

W-OLD, 2004 WL 1895180, at *6 (W.D. Mo. Aug. 23, 2004) ("The PSLRA permits the appointment of more than one person or entity as lead plaintiff."). Instead, the court may, on a case-by-case inquiry, apply a "rule of reason." *Chill*, 181 F.R.D. at 409.

Applying the rule of reason, the Court finds that the appointment of an individual investor and institutional investor as co-plaintiffs will ensure adequate representation of the class. *See generally Malasky v. IAC/Interactivecorp*, No. 04-cv-7447 (RJH), 2004 WL 2980085, at *1 (S.D.N.Y. Dec. 21, 2004).[5] In *Malasky*, an individual investor suffered the larger financial loss for over $700,000. *Id.* at *3. In comparison, the investor group's claimed losses were $628,523.92. *Id.* Though the individual investor in *Malasky* was willing to assume the responsibilities of lead plaintiff, the court appointed the individual investor along with an investor group as co-lead plaintiffs to "ensure adequate representation to the prospective class." *Id.* at *4 (citations omitted). As other courts have noted, "[c]o-lead plaintiffs are particularly appropriate in a case such as this, in which it

---

[5] Parties in the *Malasky* suit filed motions for reconsideration after the court's December 21, 2004 decision. Both parties contended that the court's first opinion "rested on the erroneous factual conclusion" that a member of the "Investor Group" the court had appointed as co-lead plaintiff was not an institutional investor. *Malasky v. IAC/InterActiveCorp*, No. 04 CIV. 7447 (RJH), 2005 WL 549548, at *1 (S.D.N.Y. Mar. 7, 2005). The court noted it had appointed an institutional investor along with the individual investor as co-lead plaintiffs "in order to ensure the adequate representation of the potentially broad panoply of interests within the class." *Id.* Having realized that the member of the "Investor Group" was in fact not an institutional investor, the court appointed another institutional investor—Cement Masons Trust—as co-lead plaintiff to work alongside the individual investor. *Id.* at *3. Of note, the *Malasky* court did not analyze the respective financial interests; however, this Court notes that a declaration filed in support of Cement Masons Trust reported a financial loss of $99,925.50, which was significantly less than the individual investor's interest of $700,000. *Id.* at *2; *Malasky*, 2004 WL 2980085, at *3.

14

appears that there are two or more smaller investors with roughly equal interests and no plaintiff with a significantly larger interest than all other plaintiffs." *In re Baan Co. Sec. Litig.*, 271 F. Supp. 2d 3, 13 (D.D.C. 2002) (quotations omitted); *see also Gluck v. CellStar Corp.*, 976 F. Supp. 542, 550 (N.D. Tex. 1997).

The appointment of co-lead plaintiffs in this case will offer several benefits. The "different perspectives" that Schammas and Steamfitters bring as individual and institutional investors "will materially add to the overall quality of lead representation in this case." *EZRA Charitable Tr. v. Rent-Way, Inc.*, 136 F. Supp. 2d 435, 444 (W.D. Pa. 2001). Schammas and Steamfitters can "pool financial resources, knowledge and experiences" and "reap the 'benefits of joint decision-making' when pressed with difficult choices that may arise in such large litigation matters." *Malasky*, 2004 WL 2980085, at *4 (quoting *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 420 (S.D.N.Y. 2004)). A co-lead plaintiff structure will "help to ensure that adequate resources and experience are available to the prospective class in the prosecution" of the class action. *Pirelli Armstrong Tire Corp.*, 229 F.R.D. at 420. In sum, the appointment of an individual investor and institutional investor as co-plaintiffs will ensure adequate representation of the class. Accordingly, the Court appoints Schammas and Steamfitters as co-lead plaintiffs.

### B.     Appointment of Counsel

Having selected the most adequate plaintiffs, the next step under the PSLRA is for the "most adequate plaintiff[s]" to "select and retain counsel to represent the class," subject to approval by the court. 15 U.S.C. § 78u-4(a)(3)(B)(v). Here, the appointed co-

lead plaintiffs seek approval of their selection of the law firms Pomerantz LLP (for Schammas) and Robbins Geller Rudman & Dowd LLP (for Steamfitters) to serve as lead counsel. The Court notes that the "PSLRA does not expressly prohibit the lead plaintiffs from selecting more than one law firm to represent the class." *Tice*, 2004 WL 1895180, at *7 (citing 15 U.S.C. § 78u-4(a)(3)). For this reason, and considering the nature of this action, the Court finds that two firms serving as lead counsel is appropriate. Turning then to the firms themselves, based on the materials submitted, both Schammas's counsel and Steamfitters's lead counsel have extensive experience prosecuting complex actions, including securities or shareholder class actions, have repeatedly served as lead counsel or co-lead counsel, and are well qualified to represent the proposed class. Indeed, at the hearing, counsel for Steamfitters stated that he has worked with Pomerantz LLP in "numerous cases where we're co-lead counsel together" and that the two firms would be able to work together on this case. (Doc. No. 43 at 26.) Accordingly, the Court approves the appointment of Pomerantz LLP and Robbins Geller Rudman & Dowd LLP as co-lead counsel "provided that there is no duplication of attorney's services, and the use of co-lead counsel does not in any way increase attorneys' fees and expenses." *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 158 (S.D.N.Y. 1997).[6]

---

[6] At the hearing lead counsel for Schammas indicated that he had served as counsel for a co-lead plaintiff in the past and had successfully coordinated with other co-lead plaintiffs:

> THE COURT: In cases where I have seen the co-lead plaintiffs, I have seen that the judge also issues an order that says that the counsel would work together to avoid duplication. Have you ever served as counsel to a co-lead plaintiff?

In addition, Schammas and Steamfitters both seek their choice of other law firms, who serve as their local counsel to be appointed as Liaison Counsel. The Court recognizes that both local law firms are eminently qualified, and they will be appointed to serve as Liaison Counsel. However, since it is unclear how the Liaison Counsel will serve, other than as each lead plaintiff's local counsel, Lead Counsel for the co-lead plaintiffs must meet and confer to better define the role of their respective local counsel as Liaison Counsel to ensure no duplication of work.

---

> MR. GRUNFELD: I have, Your Honor.
>
> THE COURT: And does that work?
>
> MR. GRUNFELD: It does, Your Honor. And of course if Your Honor appoints two movants as co-lead plaintiff's we would, of course, do just what Your Honor said.

(Doc. No. 43 at 17–18.) Counsel for Steamfitters agreed, stating that he had worked with Mr. Grunfeld "all the time" on "numerous cases" and that he was sure "Mr. Grunfeld would agree in all of those cases, we've been very successful at avoiding duplication of efforts. So we could do it here." (Doc. No. 43 at 26.) Thus, the Court is confident that the co-lead counsel for their respective clients will work together well to avoid duplicative effort.

17

**ORDER**

Therefore, based on the file, records, and submissions herein, **IT IS HEREBY ORDERED** that:

1. Schammas's Motion for Appointment as Lead Plaintiff and for Approval of Lead and Liaison Counsel (Doc. No. 15) is **GRANTED IN PART** and **DENIED IN PART**;

2. Steamfitters's request (Doc. No. 26) is **GRANTED IN PART** and **DENIED IN PART**;

3. The Court appoints Schammas and Steamfitters as co-lead plaintiffs; and

4. The respective selection of Lead Counsel and Liaison Counsel is approved, provided no work is duplicated. Lead Counsel shall meet within 14 days following this Order to define the roles of their Liaison Counsel (in addition to local counsel) to ensure that there is no duplication of work.

Date: May 20, 2022

*s/ Becky R. Thorson*
BECKY R. THORSON
U.S. Magistrate Judge